**10-4498-pr**
**Elfgeeh v. United States**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: January 31, 2012          Decided: May 23, 2012)

Docket No.  10-4498-pr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ABAD ELFGEEH,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, RAGGI, and CHIN, Circuit Judges.

Appeal from the denial by the United States District Court for the Eastern District of New York (Sterling Johnson Jr., Judge) of a petition for habeas corpus.  Appellant claims that his legal representation was per se ineffective because, although he had a licensed attorney of record, a disbarred attorney acted as his de facto counsel.  We affirm.

JAMES M. BRANDEN, Law Office of James M. Branden, New York, New York, for Petitioner-Appellant,

PAMELA K. CHEN, Assistant United States Attorney, of counsel (David C. James, Assistant United States Attorney, of counsel, on the brief),

1

for Loretta E. Lynch, United States
Attorney for the Eastern District of
New York, Brooklyn, New York, for
Respondent-Appellee.

WINTER, Circuit Judge:

Abad Elfgeeh appeals from Judge Johnson's denial of his petition for a writ of habeas corpus. We granted a certificate of appealability as to whether appellant's representation was per se ineffective under the Sixth Amendment when, although he had a licensed attorney of record, a disbarred attorney acted as his de facto counsel. We affirm.

BACKGROUND

Our description of the facts is limited to those pertinent to the issue specified by the certificate of appealability, Valverde v. Stinson, 224 F.3d 129, 136 (2d Cir. 2000) (citing 28 U.S.C. § 2253(c)(3)), namely, whether a per se ineffectiveness rule applies when a defendant, although having a licensed attorney of record, relies on the advice of a disbarred attorney.[1]

In February 2003, appellant was indicted for operating, and conspiring to operate, a money transmitting business without a license. 18 U.S.C. §§ 371, 1960. Appellant was originally represented by Dawn Cardi, who had been appointed

---

[1] Appellant moved for a supplemental certificate of appealability regarding the issue of whether Pugach and Hancock unreasonably encouraged appellant to withdraw his guilty plea, which this court denied.

2

pursuant to the Criminal Justice Act. Cardi filed a motion to suppress certain evidence, which was denied, and, on Cardi's advice, appellant pleaded guilty without a written plea agreement in October 2003.

Prior to sentencing, a friend referred appellant to Burton Pugach, telling appellant that Pugach was handling an appeal for someone the friend knew. Pugach had been disbarred in 1960 after being convicted of criminal possession of a weapon.

Appellant contacted Pugach and scheduled a meeting. After meeting with appellant, Pugach advised him that the government had a weak case and recommended withdrawal of the guilty plea. Pugach told appellant that it would cost $10,000 to file the motion to withdraw. Appellant, and members of his family who were present at the meeting, stated that Pugach charged a $500 fee for the consultation and an additional $500 when appellant gave him a fairly thick file on the case.

A few days later, Pugach contacted appellant again and told him that, after further review, he still believed appellant should move to vacate the plea. Pugach stated that it would cost $10,000 to do so. Appellant agreed to pay the fee, and a few days later Pugach arrived to collect it. Pugach told appellant to make the check out to Frank Hancock. Hancock was a licensed attorney.

Shortly thereafter, Pugach, Hancock, and appellant met at Hancock's office. Pugach opined that there was a basis for

3

withdrawing the plea, and Hancock agreed. Pugach did not advise appellant of possible negative consequences for withdrawing the plea or that the indictment could be amended to add additional charges. Hancock advised against withdrawing the plea because appellant could ultimately get a higher sentence. Appellant decided to withdraw the guilty plea. After the meeting, Hancock contacted Cardi and informed her that he had been retained to represent appellant.

In February 2004, Hancock filed the motion to vacate the guilty plea and to dismiss the indictment. That motion was denied. Nevertheless, the district court sua sponte vacated the plea because the magistrate judge had not properly advised appellant of the maximum possible prison term if he were to be sentenced consecutively on the counts charged.

After the plea was vacated, the government filed a superseding indictment that added a charge for structuring in violation of 31 U.S.C. § 5324. Appellant moved to dismiss the indictment, but the motion was denied.

Throughout the various proceedings, appellant met with Pugach and Hancock on numerous occasions. Appellant described these meetings as ones in which Hancock spoke very little, often only to express agreement with Pugach, pose a legal question, or advise Pugach to explain a particular point to appellant. Hancock was also aware that Pugach and appellant had discussed matters relating to the case and would often

4

decide the course of action before speaking with Hancock. Nevertheless, Hancock signed all documents filed with the court, and only Hancock appeared on behalf of appellant at court proceedings, other than one instance where Pugach informed the court that Hancock was unavailable.

After the motions to dismiss the indictment were denied, Hancock contacted the government regarding a new plea deal. The government declined to offer a plea, and, in September 2005, appellant was tried and convicted on all counts. He received a sentence of 188 months' incarceration, allegedly some 90 months in excess of appellant's expected sentence on his guilty plea.

Hancock was subsequently disbarred in 2008. The order of disbarment was based on multiple grounds, including Hancock's aiding Pugach in the unauthorized practice of law by signing court documents prepared by Pugach without any oversight and by conducting an oral argument where Pugach was effectively acting as the attorney. In Re Hancock, 863 N.Y.S.2d 804, 805-07 (2d Dep't 2008).

In April 2009, appellant filed the present habeas petition claiming ineffective assistance of counsel in the various pre-trial proceedings. He argued that although Hancock was the attorney of record, Pugach was his de facto attorney during the withdrawal of his plea agreement and other pre-trial proceedings. The district court denied the petition on

5

September 15, 2010. Elfgeeh v. United States, No. 09-CV-2015(SJ), 2010 WL 3780216, at *1 (E.D.N.Y. Sept. 21, 2010).

The district court concluded that the per se ineffectiveness rule, originated in Solina v. United States, 709 F.2d 160 (2d Cir. 1983), did not apply because Hancock had been admitted to practice when he represented appellant. Elfgeeh, 2010 WL 3780216, at *4. The court concluded that even if appellant received unreasonable advice from Pugach in suggesting that appellant withdraw his plea, thus fulfilling Strickland v. Washington's first requirement of a departure from professional standards, 466 U.S. 668, 687 (1984), Hancock's warning that appellant could receive a longer sentence after a trial negated Strickland's second requirement of a prejudicial effect, id.

We granted a certificate of appealability limited to appellant's argument that his representation in the pre-trial proceedings was per se ineffective because, even though his attorney of record, Hancock, was licensed throughout the time period of appellant's case, Pugach acted as de facto counsel during pre-trial proceedings.

DISCUSSION

"We review a district court's findings of fact for clear error, and its denial of a Section 2255 petition de novo." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (citing Rega v. United States, 263 F.3d 18, 21 (2d Cir. 2001)).

6

We hold that a per se ineffectiveness rule does not govern appellant's claims.

Generally, a claim of ineffective assistance of counsel must satisfy the two-prong test of Strickland: (i) the performance of counsel was so deficient that it was not "within the range of competence demanded of attorneys," and (ii) the deficiency of counsel was prejudicial to the defense. 466 U.S. at 687, 691–92.

However, the right to counsel is intended to ensure "representation by a licensed practitioner." Solina, 709 F.2d at 167. When a defendant has been represented by someone who has never been licensed to practice law, that representation is per se ineffective and thus need not satisfy Strickland's dual requirements. See United States v. Novak, 903 F.2d 883, 887 (2d Cir. 1990). The rationale for the per se rule is two-fold:

> The first is "jurisdictional" and applies in cases where the attorney is not duly licensed at the time of trial. It stems from the Supreme Court's decision in Johnson v. Zerbst, 304 U.S. 458, 468 (1938), that the failure to provide a criminal defendant with counsel created "a jurisdictional bar to a valid conviction." See Solina, 709 F.2d at 168-69 (discerning no meaningful distinction between total absence of representation and representation by unlicensed counsel). The second rationale is based on notions of conflict of interest, and applies in cases both where the lawyer is not duly licensed, see Novak, 903 F.2d at 890; Solina, 709 F.2d at 164, and where the lawyer is implicated in the crimes of his or her client, see United States v. Cancilla, 725 F.2d 867, 870 (2d Cir. 1984). In these circumstances, the

7

> defense is necessarily compromised because the advocate ordinarily "cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his [or her] background and discover his [or her] lack of credentials[,]" _Solina_, 709 F.2d at 164, or own wrongdoing. Regardless of the facts presented, application of the _per se_ rule must be justified under one or both of these rationales. _See_ _United States v. Aiello_, 900 F.2d 528, 532 (2d Cir. 1990).

_Bellamy v. Cogdell_, 974 F.2d 302, 306–07 (2d Cir. 1992) (en banc) (alterations in original, internal citations modified).

The _per se_ ineffectiveness rule is limited to situations "where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character,"[2] _Solina_, 709 F.2d at 167, or where the attorney was "implicated in the defendant's crimes," _Bellamy_, 974 F.2d at 306.

---

[2] The _per se_ rule does not apply where an attorney is not admitted in the jurisdiction of the criminal proceeding but is licensed elsewhere, or where an attorney is licensed to practice at the start of a case and immediately withdraws upon notice of disbarment. _See_ _Hurel Guerrero v. United States_, 186 F.3d 275, 279–81 (2d Cir. 1999) (counsel suspended from practicing in federal district court, but still admitted in New York State and Puerto Rico); _Bellamy_, 974 F.2d at 306–08 (counsel suspended from practice after trial based on pretrial admission of mental and physical incapacity); _Kieser v. New York_, 56 F.3d 16, 17–18 (2d Cir. 1995) (per curiam) (counsel not admitted to practice _pro hac vice_ in New York and, at arraignment, temporarily suspended from practice in New Jersey for failure to pay bar dues); _Waterhouse v. Rodriquez_, 848 F.2d 375, 382–83 (2d Cir. 1988) (attorney was licensed to practice law at the beginning of the case, was disbarred during pretrial proceedings, and withdrew upon becoming aware of the disbarment).

8

Notwithstanding dicta in decisions of other circuits,[3] we conclude that our rationale for a _per se_ ineffectiveness rule applies to representation by an individual who, before the representation in question, has been disbarred in all jurisdictions where he or she was once admitted. In such circumstances, the defendant lacks licensed representation, and a disbarred attorney has as much, or more, to fear from the court or prosecution discovering counsel's violation of the law against the unauthorized practice of law as one who has never been licensed.

By reading the right to counsel as a right to representation by someone who may legally represent criminal defendants, a _per se_ ineffectiveness rule gives the most rational meaning to the Sixth Amendment's right to the assistance of counsel. The legal profession is highly regulated, and reading the right to refer to the assistance of someone who can legally practice law satisfies the language and policy of the Amendment. See _Mitchell_, 216 F.3d at 1132

---

[3] See _United States v. Mitchell_, 216 F.3d 1126, 1132–33 (D.C. Cir. 2000) ("[T]here is no logical reason to extend the _per se_ ineffectiveness rule beyond those instances already covered in [prior precedent] - when a defendant is represented by a person never properly admitted to the practice of law."; _see also_ _United States v. Ross_, 338 F.3d 1054, 1056 (9th Cir. 2003) ("That Ross's lawyer was suspended _before_ trial, rather than during it, is a distinction without a difference. _Hoffman_ and _Mouzin_ both held that, so long as the lawyer had been admitted to practice at one point in time, his bar status at trial was not dispositive of the ineffective assistance issue: the one-time admission was enough to overcome a claim of status-based per se ineffective assistance." (emphasis in original)).

9

("Admission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client . . . .") (quoting United States v. Mouzin, 785 F.2d 682, 698 (9th Cir. 1986)). A per se ineffectiveness rule also avoids the need to scrutinize every detail of the representative's conduct for the presence of an impermissible motive of preserving the unlicensed representative's secret at the expense of serving the best interests of the defendant. The unlicensed representative has a pervasive conflict that will have largely indeterminate effects on the representation of a client. It is this indeterminacy that has caused us to extend the per se rule to circumstances in which licensed counsel is implicated in the crimes for which his or her client is on trial. See United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993) ("[W]e must assume that counsel's fear of, and desire to avoid, criminal charges . . . will affect virtually every aspect of his or her representation of the defendant.").

These reasons, however, offer no basis for applying a per se ineffectiveness rule where, as here, the defendant has a licensed attorney of record who signs all relevant papers and makes all relevant court appearances.[4] Bellamy stated that "application of the per se rule must be justified under one or both of [the given] rationales," 974 F.2d at 307, but neither

---

[4] Pugach's single court appearance to announce Hancock's unavailability does not implicate the right to effective counsel.

10

rationale applies where a defendant has licensed counsel of record and the unlicensed individual privately provides advice on which the defendant claims to have relied.

With regard to the first rationale -- the so-called jurisdictional bar, Solina, 709 F.2d at 168-69 -- the court here had no need to secure counsel for appellant because he had a licensed attorney of record, who signed relevant papers and made relevant court appearances. Nor should the court have inquired into appellant's acceptance of advice from others. A court cannot -- and, where a decision is one for the client to make, should not -- ensure that a defendant accepts advice only from his attorney of record. Indeed, many defendants may well take advice from friends or family, including persons claiming legal knowledge, when deciding to accept or reject a plea agreement, to testify at trial, etc. These decisions are for the defendant to make, see Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000), after receiving the informed advice of licensed counsel. That advice may be defective, even non-existent, but the Strickland two-prong test is fully adequate to protect defendants in such cases.

Nor does the second rationale for the per se ineffectiveness rule -- the difficulty in determining whether conduct in the representation resulted from a conflict of interest -- apply where the defendant has a licensed attorney of record. Indeed, the shoe is on the other foot with regard

11

to the need to avoid inquiry into conduct for largely indeterminable influences. If a _per se_ ineffectiveness rule joined with a _de facto_ attorney claim were adopted, defendants such as appellant would have great incentive to claim reliance on advice from unlicensed sources. The extent of such reliance would almost always be indeterminable,[5] and the claimed reliance would, in and of itself, tend to constitute the advisor as a _de facto_ attorney.

We conclude, therefore, that if the performance of the licensed attorney passes muster under _Strickland_, the defendant's decision to rely upon other sources does not violate the Sixth Amendment. If the licensed attorney's performance does not pass muster under _Strickland_, the defendant's rights are protected.

CONCLUSION

For the foregoing reasons, we conclude that the _per se_ ineffectiveness rule does not apply and affirm.

---

[5] In the present matter, for example, appellant's contacting Pugach suggests a pre-existing dissatisfaction with his plea.

12